CATHERINE A. CONWAY (SBN 98366)
GREGORY W. KNOPP (SBN 237615)
S. ADAM SPIEWAK (SBN 230872)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3012
Telephone:    310-229-1000
Facsimile:     310-229-1001
cconway@akingump.com
gknopp@akingump.com
aspiewak@akingump.com

Attorneys for Defendant Ernst & Young LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| DAVID HO, on behalf of himself and others similarly situated and on behalf of the general public and DOES 1-20<br><br>Plaintiff,<br><br>v.<br><br>ERNST & YOUNG, LLP<br><br>Defendant. | Case No. C05 04867<br><br>**DEFENDANT ERNST & YOUNG LLP'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(D)(2), 1441, 1446, AND 1453**<br><br>[DECLARATIONS OF RICHARD KAUL, DANIEL MARTIN, AND S. ADAM SPIEWAK IN SUPPORT OF DEFENDANT ERNST & YOUNG LLP'S NOTICE OF REMOVAL OF ACTION FILED CONCURRENTLY HEREWITH]<br><br>**(SANTA CLARA SUPERIOR COURT CASE NO. 105CV049741)** |

5827987

1

1    TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

2  NORTHERN DISTRICT OF CALIFORNIA:

3    PLEASE TAKE NOTICE that Defendant Ernst & Young LLP ("Ernst & Young"

4  or "the Firm") hereby removes to this Court the state court action described below,

5  pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453.  In support thereof,

6  Defendant states as follows:

7    1.    On September 27, 2005, a putative class action was commenced and is

8  currently pending against Ernst & Young LLP in the Superior Court of California,

9  County of Santa Clara, as Case No. 105CV049741, entitled DAVID HO, on behalf of

10  himself and others similarly situated and on behalf of the general public and DOES 1-

11  20, Plaintiff, vs. ERNST & YOUNG, LLP, Defendant.  See Declaration of S. Adam

12  Spiewak in Support of Defendant Ernst & Young LLP's Notice of Removal of Action

13  ("Spiewak Dec."), ¶ 2.  Attached as **Exhibit A** to the Spiewak Declaration is a true copy

14  of the Summons, Civil Cover Sheet, Complaint, Civil Lawsuit Notice, and Santa Clara

15  County Superior Court Alternative Dispute Resolution Information Sheet, as served on

16  Ernst & Young by facsimile on October 31, 2005.  See Spiewak Dec. ¶ 3.  Attached as

17  **Exhibit B** to the Spiewak Declaration is a true conformed copy of Ernst & Young

18  LLP's Answer to Plaintiff's Unverified Complaint, filed in Santa Clara Superior Court

19  on November 23, 2005.  See Spiewak Dec. ¶ 4.  There have been no further proceedings

20  in case number 105CV049741, and no other pleadings have been filed and served upon

21  Plaintiff or Ernst & Young in this action.  See Spiewak Dec. ¶ 5.

22    2.    Plaintiff is a former employee of Ernst & Young.  He asserts claims for

23  failure to pay overtime wages, failure to pay wages of terminated or resigned

24  employees, and violation of the unfair competition laws.  See Complaint, ¶¶ 13-21, 26-

25  28. The Complaint describes a putative class consisting of all persons employed by

26  Ernst & Young within the state of California as "Staff One," "Senior One" or "Senior

27  Two" personnel, or "similarly titled personnel who were performing the same sort of

28  5827987                                    2

1  functions of the named plaintiff, and subject to the same salaried compensation system,"

2  in the four years prior to the commencement of this action who were not compensated

3  for their work and overtime work as required by California law.  Id., ¶ 6.

4      3.  The Complaint and Summons were first served on October 31, 2005.  Ernst

5  & Young's Notice of Removal is timely because it is filed within thirty (30) days of that

6  service.  See 28 U.S.C. § 1446(b).

7      4.  **Jurisdiction**.  The above-described action is a civil action of which this

8  Court has original jurisdiction and thus may be removed pursuant to 28 U.S.C. §

9  1441(b).  Under 28 U.S.C. § 1441(a), a defendant may remove to federal district court

10  "any civil action brought in a State court of which the district courts of the United States

11  have original jurisdiction...."  Pursuant to the Class Action Fairness Act ("CAFA"),

12  Pub. L. No. 109-2 (enacted Feb. 18, 2005) (codified at 28 U.S.C. §§ 1332(d), 1453,

13  1711-1715), federal district courts have original jurisdiction over a class action if (1) it

14  involves 100 or more putative class members, (2) any class member is a citizen of a

15  state different from any defendant, and (3) the aggregated amount in controversy

16  exceeds five million dollars (exclusive of costs and interest).  See 28 U.S.C. §§

17  1332(d)(2) and (d)(6).

18      5.  **Class Size**.  If Plaintiff's class allegations are established, the class will

19  exceed 100 members.  See Complaint, ¶¶ 5-7; Declaration of Daniel Martin in Support

20  of Defendant Ernst & Young LLP's Notice of Removal of Action ("Martin Dec.") ¶ 4.

21      6.  **Diversity of Citizenship**.  At all relevant times, there has been diversity of

22  citizenship between the parties to the action.

23      7.  Ernst & Young is informed and believes that Plaintiff David Ho, at the time

24  this action was commenced, was a citizen and resident of the State of California.  See

25  Complaint, ¶ 2.

26      8.  Ernst & Young is not a citizen of the State of California.  "[A]n

27  unincorporated association shall be deemed to be a citizen of the State where it has its

28  5827987

3

1  principal place of business and the State under whose laws it is organized." 28 U.S.C. §

2  1332(d)(10).[1]  Ernst & Young is not organized under the laws of California.  Rather, at

3  the time this action was commenced and currently, Ernst & Young was and is a limited

4  liability partnership organized under the laws of the State of Delaware.  See Declaration

5  of Richard Kaul in support of Defendant Ernst & Young LLP's Notice of Removal of

6  Action ("Kaul Dec.") ¶ 2.  Nor is California the state in which Ernst & Young has its

7  principal place of business.  Rather, as shown below, Ernst & Young's principal place

8  of business is located in New York.

9       9.     In the Ninth Circuit, the "principal place of business" is determined by a

10  two-part inquiry.  First, the Court applies the "place of operations" test to determine in

11  what state, if any, a "substantial predominance" of business activity takes place.

12  Second, if the business's activities are not predominant in a single state, the Court

13  applies the "nerve center" test to identify the state in which the majority of the

14  business's executive and administrative functions are performed.  See United Computer

15  Systems, Inc. v. AT&T Corp., 298 F.3d 756, 763 (9th Cir. 2002).  Under either test,

16  Ernst & Young's principal place of business is plainly not California.

17       10.    The "place of operations" test is determinative "where a corporation

18  conducts 'substantially all' of its operations in one state and its headquarters are located

19  in another state."  Industrial Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1093 (9th

20  Cir. 1990) ("courts generally assign greater importance to the corporate headquarters

21  when no state is clearly the center of corporate activity").  Where the business has

22  operations spread throughout the country, the "place of operations" test cannot properly

23  identify a business's principal place of business.  See Breitman v. May Co. California,

24

25

26  [1]  The first basis for establishing citizenship is identical for a corporation and an
    unincorporated association.  Compare 28 U.S.C. § 1332(c)(1) ("a corporation shall be
    deemed to be a citizen . . . of the State where it has its principal place of business") with
27  § 1332(d)(10) ("an unincorporated association shall be deemed to be a citizen of the
    State where it has its principal place of business").

28  5827987                                                    4

1 | 37 F.3d 562, 564 (9th Cir. 1994); Ho v. Ikon Office Solutions, Inc., 143 F. Supp. 2d

2 | 1163, 1168 (N.D. Cal. 2001). To determine whether "substantial predominance" in a

3 | particular state exists, courts look to several factors, including the location of

4 | employees, tangible property, production activities, sources of income, and the

5 | business's executive and administrative functions. See Tosco Corp. v. Communities for

6 | a Better Environment, 236 F.3d 495, 500-502 (9th Cir. 2001).

7 |       11.   Ernst & Young's operations clearly do not substantially predominate in

8 | California. The Firm employs approximately 25,000 individuals in forty states and the

9 | District of Columbia, including more than 4,600 individuals in New York, more than in

10 | any other state and compared to fewer than 3,000 in California. See Kaul Dec. ¶ 7.[2] In

11 | addition, the Firm's executive and administrative operations are centrally managed from

12 | New York, not California. From its headquarters in New York, Ernst & Young makes

13 | and implements firm-wide operating, financial, employee relations, marketing,

14 | development, accounting, treasury, and legal policy decisions. Additionally, meetings

15 | of Ernst & Young's Americas Executive Board regularly take place in New York. See

16 | Kaul Dec. ¶¶ 3, 5, 6. For all these reasons, if Ernst & Young's operations substantially

17 | predominate in any one state, that state is New York.

18 |       12.   If Ernst & Young's operations are not found to substantially predominate

19 | in a single state, then the Court must apply the "nerve center" test to determine the

20 | Firm's principal place of business. See Engels v. Exel Global Logistics, Inc., No. C 04-

21 | 3944 MHP, 2005 WL 850879, *5 (N.D. Cal., April 11, 2005); Arellano v. Home Depot,

22 | U.S.A., Inc., 245 F. Supp. 2d 1102, 1106 (S.D. Cal. 2003); Ho, 143 F. Supp. 2d at 1165.

23 | Under the "nerve center" test, the principal place of business is the state where the

24 | majority of executive and administrative functions are performed. See Tosco, 236 F.3d

25 |

26 |     [2] A defendant may make the requisite showing by setting forth additional facts in

27 | declarations of knowledgeable company officials. See United Computer Systems, Inc.

28 | v. AT&T Corp., 298 F.3d 756, 763 (9th Cir. 2002).

1    at 500.  Relevant factors include where executives reside and maintain offices, where

2    administrative and financial offices are located, where directors meet, where income tax

3    returns are filed, and where day-to-day control over the business is executed.  See Unger

4    v. Del E. Webb Corp., 233 F. Supp. 713, 716 (N.D. Cal. 1964), accord State Farm Fire

5    & Casualty Co. v. Byrd, 710 F. Supp. 1292, 1293 (N.D. Cal. 1989).

6         13.    Under the "nerve center" test, Ernst & Young's principal place of business

7    is clearly in New York.  As explained above, the vast majority of the Firm's executive

8    and administrative functions occur in New York.  For example, the executive officers of

9    Ernst & Young, including the chairman and chief executive officer, chief financial

10   officer, vice chair of finance and administration, vice chair and general counsel, and

11   vice chair of people (human resources) maintain their offices at Ernst & Young's

12   headquarters in New York.  From its headquarters in New York, the Firm manages day-

13   to-day operations firm-wide, including determining and implementing policy regarding

14   human resources, marketing, finance, accounting, and legal issues.  See Kaul Dec. ¶¶ 3-

15   6.  In short, because Ernst & Young's executive and administrative functions clearly are

16   concentrated in New York, under the "nerve center test" as well, New York is Ernst &

17   Young's principal place of business.  See Tosco, 236 F.3d at 500.

18        14.    **Amount in Controversy**.  Defendant avers, for purposes of this Notice

19   only, that if Plaintiff prevailed on the claims asserted in this action, the requested

20   monetary recovery would exceed five million dollars.[3]

21        15.    For his Fourth Cause of Action, Plaintiff alleges that Ernst & Young owes

22   penalties for having failed to pay wages – including the allegedly unpaid overtime pay –

23   to employees upon the end of their employment, as required by Section 203 of the

24   California Labor Code.  See Complaint, ¶¶ 26-28.  Under Section 203, former

25

26        [3] A defendant may make the requisite showing by setting forth additional facts in

27   the notice of removal or by affidavit.  See Lamke v. Sunstate Equipment Co., LLC, 319

     F. Supp. 2d 1029, 1032 (N.D. Cal. 2004).
28
     5827987                                              6

1    employees whom an employer willfully denied wages may recover penalties in the

2    amount of their daily rate for a period of up to thirty days. See Cal. Lab. Code § 203.

3        16.    The class of former employees whom Plaintiff claims are entitled to

4    penalties under Section 203 includes at least 736 individuals who worked full-time at

5    the Staff One, Senior One, or Senior Two level since September 26, 2002. At the time

6    their employment ended, these former employees were earning an average annual salary

7    of more than $56,000. See Martin Dec. ¶¶ 6, 7. Therefore, their average daily rate of

8    pay is more than $215, and a 30-day penalty would exceed, on average, $6,450 per

9    person.[4] Accordingly, with respect to the 736 putative class members who are former

10   full-time employees, the amount of penalties in controversy exceeds $4,747,200.

11       17.    When the overtime pay claims are factored in as well, the jurisdictional

12   amount is plainly satisfied. Plaintiff's First and Second Causes of Action assert failure

13   to pay overtime compensation. See Complaint, ¶¶ 13-21. Defendant avers, for purposes

14   of this Notice only, that the putative class with respect to the overtime claims would

15   include at least 2,500 current and former employees. See Martin Dec., ¶ 4. The average

16   salary of these employees is more than $52,000, which translates to an hourly rate of at

17   least $25.00. See Martin Dec., ¶ 5. Therefore, the average class member would be due

18   approximately $37.50 per overtime hour worked.[5] If, on average, each putative class

19   member worked just three hours of overtime over the course of the entire class period,

20   the total amount of overtime compensation at issue would exceed $280,000.

21

22

23

24       [4] The daily rate for a full-time employee is calculated by dividing the annual
25   salary by fifty-two to ascertain a weekly salary, and then dividing that amount by five,
     the number of days an employee typically works in a week. See, e.g., Mamika v. Barca
26   68 Cal. App. 4th 487, 492-93 (1998); see also Division of Labor Standards Enforcement
     web page, available at: http://www.dir.ca.gov/dlse/FAQ_WaitingTimePenalty.htm.
27       [5] Because overtime is compensated at a time-and-a-half rate, an employee earning
     $25.00 per hour would be compensated $37.50 for each overtime hour worked.
28   5827987                                              7

18.     When the penalties at issue – more than $4,747,200 – are combined with the overtime compensation at issue, the amount in controversy clearly exceeds the $5,000,000 threshold.

19.     **Venue**. The United States District Court for the Northern District of California is the judicial district embracing the place where Case No. 105CV049741 was filed by Plaintiff and is therefore the appropriate court for removal pursuant to 28 U.S.C. § 1441(a).

20.     There are no grounds that would justify this Court in declining to exercise its jurisdiction pursuant to 28 U.S.C. §§ 1332(d)(3) or requiring it to decline to exercise jurisdiction pursuant to 28 U.S.C. §§ 1332(d)(4).


WHEREFORE, Ernst & Young LLP requests that the above action now pending against it in the Superior Court of California, County of Santa Clara, be removed therefrom to this Court.


Dated:  November 28, 2005          AKIN GUMP STRAUSS HAUER & FELD LLP

By _____
                    S. Adam Spiewak

Attorneys for Defendant Ernst & Young LLP

5827987

8