*E-filed 8/8/07*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID HO, et al. | Case No. C05-04867 JF (HRL) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S FOURTH MOTION TO COMPEL** |
| ERNST & YOUNG, LLP, | Re: Docket No. 77 |
| Defendant. | |

In this putative class action, named plaintiff David Ho[1] contends that his employer, Ernst & Young ("E & Y"), improperly treated him and other employees as "professionals" exempt from California's overtime laws. The current scope of discovery is limited to that which is relevant to the class certification. Plaintiff now moves to compel production of four items related to time and activity records (a.k.a. "TRAX" records) produced pursuant to a prior order of this court ("May 9 Order").[2]

**1.    Employee Names**

The TRAX records contain employee identification numbers, but no names. Thus, Plaintiff seeks an index matching the names of employees to the identification numbers. He

---

[1] The amended complaint now includes several named plaintiffs; however, for convenience, they are here referred to in the singular as "Plaintiff" or "David Ho."

[2] [Docket No. 59].

1 argues that the index is needed so that Plaintiff's counsel may question defense and class
2 witnesses about particular TRAX entries. E & Y offers to produce a limited list of names,
3 excluding those putative class members who are currently employed by Defendant and those
4 who elected to not be contacted by Plaintiff's counsel in response to the parties' joint notice.
5 Defendant argues for exclusion because current employees know their identification numbers
6 and can voluntarily disclose them and because Plaintiff does not need names of employees that
7 he cannot contact or question.

8      The party resisting relevant, non-privileged discovery has the burden of showing why
9 discovery should not go forward. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.
10 1975). This court has already ruled that putative class members' TRAX records are relevant to
11 the issue of class certification (regardless of whether those individuals requested to not be
12 contacted). What Plaintiff seeks here is little more than an index necessary to de-code these
13 records. Moreover, Defendant has shown no burden in producing such a list. Accordingly,
14 Plaintiff's motion with respect to the production of an employee names index is GRANTED.
15 This ruling does not change the fact that Plaintiff's counsel may not contact those putative class
16 members who have elected not to be contacted. E&Y shall produce that information **within ten**
17 **days of the date of this order**.

19      **2.    Task I.D. information**
20      Plaintiff also moves to compel an index which explains the activities associated with the
21 task identification numbers used in some of the TRAX activity description entries. E&Y agrees
22 to produce such an index. Therefore, on this point, Plaintiff's motion is moot.

24      **3.    Identification of Engagement and Client Names**
25      The May 9 Order, granting Plaintiff's First Motion to Compel, noted, "If defendant,
26 despite the protective order, is queasy about releasing client names to plaintiff, it may redact the
27 names." At that time, Plaintiff did not object to this proposed redaction. However, after
28 realizing that many of the TRAX entries contain no description of employee activities, Plaintiff

now seeks disclosure of "client engagement information." According to Ho, this information is necessary because class members are likely to remember their work activities based upon the particular client engagements.[3] There are two (potentially intertwined) groups of information within the category of client engagement information: engagement names (i.e., project names, which might incorporate client names) and client names. Plaintiff seeks both.

E & Y offers to produce an index of engagement names only - with client names redacted. Defendant argues that this issue was decided in the May 9 Order and, in reliance on that order, E & Y expended substantial resources.[4] Defendant acknowledges that the relationship between E & Y and its clients is often a matter of public record, but contends that the details of the work done for those clients are not. E & Y also argues that Plaintiff should not be permitted to reverse his position now, when he was aware of the potential for lacking detail in the TRAX entries prior to Defendant's redaction efforts. Specifically, Defendant points to Ho's own TRAX record which contains a large number of vague work activity entries.

Because Defendant had previously been granted leave to do so, and because no change in circumstances since that time warrants reversal, Plaintiff's motion as it pertains to the disclosure of client names is DENIED. However, Plaintiff's motion as to the production of "engagement information" or "engagement names" is GRANTED (Defendant may redact client names if it chooses). E&Y shall respond to this request **within ten days of the date of this order**.

### 4. Non-TRAX Time and Activity Records

Finally, Plaintiff requests production of time and activity records separate from the TRAX records. While working on certain audit engagements, putative class members entered

---

[3] For example, suggests Plaintiff, class members may recall that on the "Smith engagement" they spent all of their time photocopying documents. If the client engagement code for the "Smith engagement" is known, the TRAX records will show how much time a class member spent on that project. Therefore, even if the work description entry is blank, Plaintiff may be able to determine the number of hours spent photocopying.

[4] E &Y declares that, even with the strict protective order in place, it chose to spend more than $150,000 reviewing and manually redacting client names from more than two million time entries. Knopp Decl. ¶ 7.

3

1 their time and details of their work activities into spreadsheets which became part of audit files.
2 These were created largely to compare the time spent on projects with the billing rates, so that E
3 & Y could determine if increased charges should be sought. Plaintiff argues that these
4 documents should have already been produced pursuant to the May 9 Order compelling
5 production of class members' time and activity records.

6 Defendant says that locating these spreadsheets would be extremely burdensome
7 because they were used only sporadically on audit engagements and are maintained in the files
8 for the particular engagement to which they applied. According to E & Y, it would have to
9 review the individual files of over 6,000 audit engagements and each file review would require
10 roughly ten minutes.[5] Therefore, E & Y offered to produce a sample of responsive
11 spreadsheets (with client names redacted) from 100 randomly-selected audit engagements files.
12 Plaintiff contends that the production burden claimed by Defendant is overstated and
13 emphasizes the importance of these documents. According to Ho, the TRAX entries from E &
14 Y's largest department - the auditing department - contain very few work activity descriptions.

15 These documents fall within the category of class members' time and activity records for
16 which this court has already deemed relevant and compelled production. However, the court is
17 sensitive to the production burden on Defendant. Accordingly, Plaintiff's motion with respect
18 to these Non-TRAX time and activity records is GRANTED IN PART. Defendant shall
19 produce a total of 100 time and activity spreadsheets created for various audit engagements.[6]
20 The spreadsheets produced shall be a representative sample of such records, originating from
21 offices across California and spanning the relevant time frame. E & Y may elect to redact client
22 names from the production. Defendant shall produce the responsive records **within fourteen**
23 **days of the date of this order**.

---

[5] This estimate, provided at oral argument, is a departure from Defendant's papers which indicated that each audit file would need to be reviewed manually, requiring one to two hours per file review.

[6] In the very unlikely scenario that Defendant is unable to locate 100 spreadsheets (after an exhaustive database search), E & Y shall produce all responsive records located and file a declaration explaining the measures used to search and the reason for the lesser production.

4

**IT IS SO ORDERED.**

Dated: 8/8/07



_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5

THIS IS TO CERTIFY THAT A COPY OF THIS ORDER WILL BE ELECTRONICALLY MAILED TO:

Catherine A. Conway cconway@akingump.com, thowe@akingump.com

Leon Greenberg wagelaw@aol.com

Gregory William Knopp gknopp@akingump.com, dkucko@akingump.com

Seth Adam Spiewak aspiewak@akingump.com, thowe@akingump.com

Mark R. Thierman laborlawyer@pacbell.net, kellyann@callatg.com; thier3@callatg.com; thier4@callatg.com; thier6@callatg.com

Counsel are responsible for transmitting this order to co-counsel who have not signed up for e-filing.

Dated: 8/8/07           /s/       KRO
                         Chambers of Magistrate Judge Howard R. Lloyd