\*\* E-Filed 03/04/2008 \*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID HO, on behalf of himself and all others similarly situated and on behalf of the general public and DOES #1-20,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>ERNST & YOUNG LLP,<br><br>　　　　　　　　　Defendant. | Case Number C 05-04867 JF<br><br>ORDER[1] GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>[re: docket no. 78] |

　　Defendant Ernst & Young LLP ("E&Y") moves for summary judgment as to the claims of Plaintiff David Ho ("Ho").  For reasons set forth below, the motion will be granted.

**I.  BACKGROUND**

　　After being terminated from E&Y, Ho filed the instant action seeking overtime compensation.  Ho alleges that E&Y improperly classified him as a salaried employee and then exempted him from overtime pay under California law.  He purports to represent a class of all

---

[1] This disposition is not designated for publication and may not be cited.

Case No. C05-04867
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC3)

persons employed by E&Y in California who were performing the same functions and were subject to the same salaried compensation system.

Ho is a law school graduate with specialized training in tax law.  Ho was hired by E&Y in July, 2000 as a "staff 2."  This position is a above entry-level position and requires the employee to review and analyze client data, identify and research tax issues arising from client situations, conduct legal research and analysis, respond to client questions, and develop client relationships.  Ho initially was hired at a salary of $75,000 and received a starting bonus of $10,000.

E&Y asserts that during the two years that he was employed by E&Y, Ho was responsible for researching various legal doctrines, analyzing complex international tax issues, drafting lengthy client memos, and communicating to clients about problems and solutions.  E&Y contends that Ho's deposition testimony, coupled with his self-assessments and performance evaluations, establishes that Ho meets all of the criteria for the administrative exemption from entitlement to overtime pay.  E&Y also argues that any evidence that Ho spent less than fifty percent of his time performing exempt duties is attributable to Ho's own substandard performance.

Ho alleges that he spent the majority of his time performing secretarial, clerical, and data entry support work and thus is entitled to overtime compensation.  Ho claims that he did not perform work activities that were of an exempt nature for more than fifty percent of his time.

## II.  LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

1  *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents
2  evidence from which a reasonable jury, viewing the evidence in the light most favorable to that
3  party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49;
4  *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

## III.  DISCUSSION

An employee is considered administratively exempt under California law when he (1) performs non-manual work directly related to management policies or general business operations of his employer or his/her employer's customers; (2) customarily and regularly exercises discretion and independent judgment; (3) work[s] along specialized or technical lines requiring special training, experience, or knowledge; (4) is primarily engaged in duties that meet the test of exemption; and (5) earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment.  8 Cal. Code Regs. §10040(2).

### 1.   Whether Ho performed non-manual work directly related to management policies or general business operations

An administratively exempt employee must perform work "directly related to management policies or general business operations of his employer or his employer's customers."  8 Cal. Code Regs § 11040(2)(a)(I).  "The administrative exemption . . . refers largely to activities that involve 'advising the management, planning, negotiating, [and] representing the company.'"  *Perine v. Abf Freight Systems, Inc.*, 457 F.Supp.2d 1004, 1013 (C.D. Cal. 2006) *citing Paliacio v. Progressive Ins. Co.*, 244 F. Supp.2d 1040, 1046-47 (C.D. Cal. 2002); *see also* 29 C.F.R. § 541.205(b).

Ho argues that there is no evidence that he ever formulated any sort of advice or analysis for E&Y's clients.  He contends that § 11040(2)(a)(I) requires that overtime-exempt administrative work must relate directly to management policies or general business operations and be of substantial importance, and that in contrast his work consisted of "mere assistance" and "contributions."  Opp. at 11:3-6.  Ho offers a declaration ("Ho Decl.") in which he states that he had significantly less meaningful client responsibilities than E&Y claims is supported by his testimony.  For example, Ho states that he spent more than eighty percent of his time for E&Y

3

Case No. C 05-04867 JF
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC3)

1 performing clerical or secretarial support (often data entry) assignments that were given to him
2 by his superiors. Ho Decl. at ¶ 3.

3      E&Y argues that Ho's declaration conflicts with his deposition testimony and that the
4 deposition testimony controls. E&Y points out that Ho testified at his deposition that he had
5 substantial client responsibilities, and that he served as the primary contact for several clients.
6 E&Y cites to several specific portions of Ho's deposition transcript ("Ho Tr.") to support its
7 position.

8      Ho does not identify portions of his deposition testimony that contradict the portions
9 cited by E&Y. Rather, Ho relies solely on a subsequent declaration that is inconsistent with his
10 deposition testimony. A party "cannot create an issue of fact by an affidavit contradicting his
11 prior deposition testimony." *Kennedy v. Allied Mutual Ins.*, Co., 952 F.2d 262, 266 (9th Cir.
12 1991). To the extent Ho's declaration conflicts with his deposition testimony, his deposition
13 testimony controls. *See Freeman v. Corporate Express Delivery Systems, Inc.*, 1999 WL
14 1012331 (N.D. Cal. 1999) *citing School Dist. No. 1J, Multnomah County v. Acands, Inc.*, 5 F.3d
15 1255, 1264 (9th Cir. 1993).

16      Ho's deposition testimony shows that he performed activities typical of a tax consultant.
17 Ho testified in his deposition that he researched tax issues, regularly reviewed the Tax Code, and
18 translated complex tax issues into plain English for clients who did not have the tax expertise he
19 did. Ho Tr. 142:1-19, 145:24-146:24, 147:9-22, 158:1-17, 161:8-163:21, 167:12-15. While Ho
20 argues that these services "involved no innovation or creativity on his part," that is not the
21 standard for the administrative exemption. According to his own testimony, Ho spent two to
22 four weeks researching, reviewing, and analyzing cases for Hewlett-Packard concerning the
23 "informal claims doctrine," which permits a refund without filing a formal tax return, and then
24 writing a forty-to-sixty page summary of the cases he found. Ho. Tr. 209:9-212:6. This project
25 at least was indicative of the type of work E&Y expected its "staff 2" employees like Ho to
26 perform. Ho also testified at his deposition that he worked directly with E&Y clients. Even
27 viewed in the light most favorable to Ho, the evidence shows that Ho had substantial
28 responsibilities with respect to clients and served as the primary contact for several clients. Thus,

as a matter of law, he was engaged in duties that are "directly related" to "management policies" or "general business operations."

### 2. Whether Ho customarily and regularly exercised discretion and independent judgment

"[T]he exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a). Ho argues that he is non-exempt because he had no authority to do, or say, anything of substance unless it was approved in advance by his superiors. However, "the fact that an employee's decisions are subject to review" does not preclude the exercise of discretion and judgment. *Copas v. East Bay Municipal Utility District*, 61 F. Supp.2d 1017, 1026 (N.D. Cal. 1999).

Again, Ho's deposition testimony contradicts his subsequent declaration and legal argument. Ho testified at his deposition that as part of his responsibilities he determined what client questions to answer directly and what questions to relay to his supervisors. Ho Tr. 145:24-146:24, 147:9-22, He also testified that he contacted one E&Y client on a monthly basis and supervised the coordination of activities between foreign E&Y offices and the client. Ho Tr. 142:1-144:19. He testified that for one client he translated complex tax concepts into "plain English" because the client was not a tax expert. Ho Tr. 149:7-150:6. Ho admitted that for at least ten clients, he researched whether the information on the client's website was sufficient for purposes of completing an "in-depth write up of the client's industry and line of products and services" or whether further research was necessary. Ho Tr. 152:24-155:25. While Ho again attempts to create an issue of fact with his declaration, this is improper.

### 3. Whether Ho performed work along specialized or technical lines requiring special training, experience, or knowledge under only general supervision.

As noted previously, Ho is a law school graduate with prior tax experience. Prior to joining E&Y, Ho also received additional tax experience and training at Price Waterhouse & Coopers, and attended several continuing professional education classes.

Ho does not dispute that at least some of the work he performed required such

professional training, but he claims that he used such training, experience, and knowledge only twenty percent of the time. However, the law does not require that professional training be used for a certain percentage of time. 8 Cal. Code Regs. §11040(A)(2)(d). Further, his deposition testimony and other evidence shows that Ho performed such tasks for more than twenty percent of his time.

    **4.    Whether Ho spent more than fifty percent of his time performing work that qualifies as exempt.**

In order to qualify as a non-exempt employee, the employee must be primarily engaged in duties that meet the test of the exemption. Ho contends that he spent "at least [eighty percent] of his time while employed by the E&Y performing mundane, low level, tasks." Ho Decl. at ¶ 3. In support, Ho submits an analysis of a selection of his time records performed by Glenn Pannenborg, C.P.A. Ho argues that he "spent at least [eighty perent] of his time while employed by [E&Y] performing mundane, and low level, tasks such as entering data in spreadsheets; arranging conference calls with clients; acting as a stenographer at meetings and writing down, verbatim, everything that was discussed; copying or filing documents; proofreading documents for numerical, grammatical, or formatting errors; retrieving materials for superiors, and similar tasks." Opp at 1:7-14. However, even if in the course of performing his work he was required to perform routine tasks, such tasks are included in exempt work. 29 C.F.R. §541.208(b). *See Nordquist v. McGraw-Hill Broadcasting Co.*, 32 Cal. App. 4th 555, 562 (1995) ("Such activities as gathering and summarizing the information and follow-through activities . . . if it is an integral part of the administrative task, it may be counted as part of the exempt duties." ); *Copas*, 61 F. Supp. 2d at 10364 ("Any routine work that [plaintiff] performed, such as reviewing insurance applications for completeness, was directly and closely related to the performance of his exempt primary duties, and therefore exempt."). The time record analysis does not show whether the activities Pannenborg categorized as non-exempt in fact were activities that were performed in connection with exempt duties.

Additionally, Pannenborg's analysis does not account for 1,239 hours from time entries that contain a "miscellaneous" description and entries that describe educational activities or

internal organizational meetings. Pannenborg Decl. at ¶ 4. These hours could have been spent performing exempt tasks or activities to facilitate exempt tasks, or they could have been activities that were non-exempt. Additionally, at least nine months of time sheets are not included in Pannenborg's analysis at all. These time sheets were attached to Ho's deposition and thus were available to Ho and Pannenborg. Accordingly, Pannenborg's declaration lacks probative value, and Ho's statement that he performed non-exempt tasks for eighty percent of his time is not supported by admissible evidence.

In any event, even if there were a dispute as to whether Ho was engaged in exempt activities less than half the time, Ho cannot avoid summary judgment, because his performance at E&Y was substandard for the position he held. Ho states in his declaration that he was underutilized at E&Y.[2] Ho Decl. at ¶ 27. E&Y admits that it underutilized Ho but explains that Ho was not performing at the level expected of a "staff 2." Ho Tr. 196:25-197:15. Ho's deposition testimony shows that his performance was criticized. For example, even though he knew his position required him to begin work early in order to communicate with clients in different time zones, Ho often arrived at work late. Ho Tr. 67:17-68:5. Further, Ho testified that he sometimes would leave work early on Fridays. Ho Tr. 222:8-10. Ho was faulted for substandard communication skills by a manager who reviewed his work. Ho. Tr. 175:9-15. Ho states in his declaration that "[E&Y] observed that my data entry (spreadsheet) work products and summaries could be improved as there were occasions when they had errors or appeared (at least to my performance reviewer) to be sloppy or were not updated properly." Ho Decl. at ¶ 25. Ultimately, Ho was fired for failing to meet E&Y's performance expectations. Ho Tr. 197:15-18. "An employee who is supposed to be engaged in [exempt] activities during most of his working hours and falls below the fifty percent mark due to his own substandard performance should not thereby be able to evade a valid exemption." *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785,

---

[2] Ho alleges that it was Ernst & Young's policy to not give his department any significant number of [exempt] projects. However, Ho offers no evidence of such a policy beyond allegation and accordingly does not create a factual dispute for the purposes of summary judgment. *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("Mere allegation and speculation do not create a factual dispute for purposes of summary judgment.")

802 (1999).

**5.     Whether Ho's monthly salary exceeded twice the state minimum wage**

California's Wage Order requires that an administratively exempt employee "earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment." 8 Cal. Code Regs. § 11040(g). Ho's starting salary was $75,000, excluding the $10,000 starting bonus. Eventually his salary was raised to $80,000. This salary was more than six times the states minimum wage at the time in 2000. Thus, Ho exceeded twice the minimum wage at all times that he was employed by E&Y.

## IV.  ORDER

Because Ho meets all of the requirements of the administrative exemption, E&Y's Motion For Summary Judgment will be GRANTED.   The Clerk shall enter Judgment and close the file.

DATED: March 4, 2008

_____
JEREMY FOGEL
United States District Judge

Case No. C 05-04867 JF
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC3)

This Order has been served upon the following persons:

| | |
|---|---|
| Mark R. Thierman | laborlawyer@pacbell.net |
| Leon Greenberg | wagelaw@aol.com |
| Catherine A. Conway | cconway@akingump.com |
| Gregory William Knopp | gknopp@akingump.com |
| Stephanie S. Der | sder@akingump.com |

Case No. C 05-04867 JF
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC3)