\*\*E-Filed 1/15/09\*\*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID HO, et al.,<br><br>                    Plaintiffs,<br><br>      v.<br><br>ERNST & YOUNG LLP,<br><br>                    Defendant. | Case Number C 05-4867 JF (HRL)<br><br>ORDER[1] DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SETTING CASE MANAGEMENT CONFERENCE |

Defendant Ernst & Young LLP ("E&Y") seeks summary judgment with respect to the claims of Plaintiff Sarah Fernandez ("Fernandez"). The Court has considered the briefing submitted by the parties as well as the oral arguments of counsel presented at the hearing. For the reasons discussed below, the motion will be denied.

**I. BACKGROUND**

This putative class action was filed in the Santa Clara Superior Court on September 27, 2005, asserting claims for unpaid overtime wages on behalf of E&Y employees who were classified improperly as exempt from overtime pay under California law. After the action was

---

[1] This disposition is not designated for publication in the official reports.

removed by E&Y to this Court, the operative first amended complaint ("FAC") was filed on behalf of four named plaintiffs: Fernandez, David Ho ("Ho"), John Maxton ("Maxton"), and Nathan Lay ("Lay"). The Court subsequently granted summary judgment for E&Y with respect to Ho's claims, and approved the parties' stipulated dismissal of Maxton and Lay; only Fernandez's claims remain.

Fernandez holds a degree in accounting from California State University, Long Beach. Prior to graduation, she worked for E&Y as an intern in the summer of 2003. In September 2004, following graduation, she started as a "staff 1" in E&Y's Assurance and Advisory Business Services ("AABS") group. At that time she was twenty-three years old, and her starting salary was $41,000.[2] The description of AABS staff positions read in part as follows: "Will serve as members of multiple client engagement teams which primarily assist in performing audits of financial statements as well as often being involved with providing other assurance services that include: reviews, compilations, special reports, SEC compliance, debt compliance, comfort letters, reviews of interim data, internal control reviews, and regulatory and other compliance reporting." Declaration of Bin Wolfe, Exh. A, Position Description. At all relevant times, employees in the AABS group were organized into the following positions, in ascending order: staff 1, staff 2, senior 1, senior 2, senior 3, manager, senior manager, executive director, and partner/principal. Wolfe Decl. at ¶ 4.

Fernandez initially received positive performance reviews and was promoted to "staff 2." However, after this initial period, her reviews reflected concerns about tardiness and excessive time spent on personal instant messaging, sidekick sametime, and email. On July 13, 2005, Fernandez was given a performance improvement plan specifying that she was to: limit her use of personal instant messaging, sidekick sametime, and email; concentrate on finishing assignments on time; ask for additional work when she finished a project; and arrive to client locations on time. Declaration of Gregory Knopp, Exh. 3, Performance Improvement Plan.

---

[2] There is some discrepancy in the record as to whether Fernandez's starting salary was $41,000 or $45,000; this discrepancy is immaterial to the present analysis.

2

Fernandez admits that although she tried to comply with the plan at first, after a few months she no longer tried. Knopp Decl., Exh. 1, Fernandez Depo., 208:13-25. Fernandez conceded that eventually she was "just doing whatever was necessary to get by." *Id*. 219:8-10. Fernandez was fired in July 2006.

Fernandez claims that she was misclassified as a salaried employee exempt from California's wage and hour laws, and that in fact she is entitled to overtime pay. She sues on behalf of herself and all similarly situated E&Y employees for: (1) unpaid overtime wages under California Labor Code § 1194; (2) unlawful business practice in violation of California Business & Professions Code § 17200; (3) statutory interest on unpaid wages under California Labor Code § 218.6; (4) waiting penalties under California Labor Code § 203; and (5) wages for worked break time under California Labor Code § 226.7. E&Y seeks summary judgment on the basis that Fernandez was classified properly as an exempt employee.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

## III. DISCUSSION

Subject to certain exceptions, California Labor Code § 510 requires overtime pay for

"[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek." Cal. Lab. Code § 510(a). The Industrial Welfare Commission ("IWC") is empowered to establish exemptions from the general overtime requirement. Cal. Lab. Code § 515(a). At issue in this case is the administrative exemption established by the IWC in Wage Order 4-2001, codified at Cal. Code Regs., tit. 8, § 11040.[3] As relevant here, the administrative exemption applies to any employee: (1) whose duties involve "[t]he performance of office or non-manual work directly related to management policies or general business operations of his/her employer or his employer's customers"; (2) "[w]ho customarily and regularly exercises discretion and independent judgment"; (3) "[w]ho performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge" *or* "[w]ho executes under only general supervision special assignments and tasks"; and (4) "[w]ho is primarily engaged in duties that meet the test of the exemption." 8 Cal. Code. Regs. 11040(1)(A)(2)(a)-(f). The employee also must earn a monthly salary equivalent to at least twice the state's minimum wage for full-time employment. 8 Cal. Code Regs. 11040(1)(A)(2)(g).

There is no dispute that the salary element is met in this case. The Court thus turns its attention to the first four elements listed above.

The undisputed evidence in the record establishes that the first element is met, that is, that Fernandez performed office work directly related to the business operations of E&Y and its customers. Section 11040 expressly incorporates provisions of the Code of Federal Regulations defining such work to include "work in functional areas such as tax; finance; accounting; budgeting; auditing . . . ." *See* 8 Cal. Code Regs. §11040(1)(A)(2)(f); 29 C.F.R. § 541.201(b) (West 2006); *see also* §§ 541.201(c) (stating that tax experts or financial consultants may be administratively exempt), 541.203(b) (West 2006) (stating that employees in the financial

---

[3] At page one of its opening memorandum of points and authorities, E&Y asserts that Fernandez is both administratively and professionally exempt from California's overtime requirements. However, E&Y does not thereafter address the professional exemption in the body of the memorandum; nor is the professional exemption addressed in the reply. Accordingly, the Court addresses only the application of the administrative exemption.

4

services industry generally meet the duties requirements for the administrative exemption). The Court has no difficulty concluding as a matter of law that Fernandez performed the type of work required under the first element.

However, the evidence is in conflict as to the degree to which Fernandez exercised independent judgment and worked under only general supervision (second and third elements above), and as to the amount of time Fernandez spent performing work that meets the test of the exemption (fourth element above).

**A.    Degree To Which Fernandez Exercised Independent Judgment And Worked Under Only General Supervision**

As the moving party, E&Y has the initial burden of demonstrating that Fernandez satisfies the requirements that she exercised independent judgment and worked under only general supervision. E&Y relies upon Fernandez's deposition testimony with respect to certain of her assignments. For example, Fernandez testified that with respect to one client, she went through the expenses of individuals on the Board of Directors to ensure that "they weren't expensing over a certain amount and that the expenses seemed reasonable, that they weren't for like things that just shouldn't be expensed on the business." Fernandez Depo. 119:18-23. Fernandez testified that the manager "basically gave me like a general guideline and just used normal, you know, logic" to identify expenses "that any normal person would expect not to – shouldn't be charged to a business." *Id*. at 120:4-9.

E&Y points to Fernandez's testimony regarding "footing and tying" another client's SEC filing. Fernandez testified that "I had to add every number column or row and make sure – I had to test their – if they said there were certain ratios, I had to recalculate the ratios, and then I had to get the working papers from [the client's] file and just make sure the numbers came – to show that the numbers came from that worksheet then look to the financial statement, that the numbers that the team had tested were exactly being illustrated on the 10K." *Id*. at 108:25 - 109:7. If Fernandez found any anomalies, she was to flag them and let her senior know there was a problem. *Id*. at 109:18-21.

E&Y also cites Fernandez's testimony that she did "drop and counts" for two weeks at a

client's facility in Las Vegas. Fernandez testified that a "drop and count" is "when you go and watch in the surveillance room, you watch the money counters collect all the money from the – cash from the tables and the coins, and then you watch them count them from the room." *Id*. at 93:15-19. The purpose is to verify that the numbers stated at the end of the day are correct. *Id*. at 93:20-22. Fernandez was the only E&Y employee present for that particular assignment. *Id*. at 94:12-16.

      E&Y asserts that Fernandez's testimony and other evidence is sufficient to meet E&Y's initial burden to show that Fernandez exercised independent judgment and worked under only general supervision. The Court is not persuaded that such characterizations necessarily follow from the evidence. But even assuming for purposes of this motion that E&Y has met its initial burden, Fernandez presents her own declaration statements[4] to clarify her deposition testimony and to show that in fact she did not regularly exercise independent judgment or work under only general supervision. For example, Fernandez states that with respect to the first assignment referenced above (reviewing board members' expenses), she was directed to report to her superiors any expenses that exceeded specific guidelines she had been given or that seemed to be abnormal business expenses. Fernandez Decl. ¶ 23. She herself did not make any decision as to whether any of the expenses were or were not proper business expenses; those determinations were made by her superiors. *Id*. Fernandez states that despite these restrictions, that particular assignment actually gave her more responsibility than usual, because she was permitted to assist with "characterization" of client data, while for the most part she was given assignments involving "verification" that the clients' numbers added up and were documented properly. *Id*. at ¶ 24.

---

[4] E&Y objects to portions of Fernandez's declaration as irrelevant, lacking foundation and personal knowledge, and conflicting with her prior deposition testimony. The objection is overruled. The portions of the declaration relied upon by the Court are relevant and based upon Fernandez's personal experience at E&Y. There is no direct conflict between these portions of the declaration and Fernandez's prior deposition testimony. Fernandez moves to strike E&Y's objection on various grounds. Given the Court's ruling with respect to the objection, the motion to strike is denied as moot.

With respect to the "drop and counts" assignment in Las Vegas, Fernandez states in her declaration that her job consisted of "12 hour shifts of observing casino employees count cash in the cash counting room." *Id*. at ¶ 18. She was to report any instances in which an employee pocketed cash or otherwise failed to count cash properly. *Id*. She did not observe any such conduct. *Id*. She personally counted certain cash bundles to confirm that the amount of such bundles had been accurately reported. *Id*. Although Fernandez was the only E&Y employee present during these shifts, her superiors decided to what extent the employee counts should be observed and how many counts Fernandez personally should make. *Id*.

Fernandez states that for the most part she performed footing and tying work, which consisted of matching up financial data that already had been characterized by the client, and reporting any numbers that did not match. *Id*. at ¶ 19. She also prepared comfort letters for her superiors' signature; those were form letters containing standard language. *Id*. at ¶ 21. She states explicitly that she was not given responsibility for determining the scope of the audits, making audit conclusions, or making decisions about whether errors in client information were material. *Id*. at ¶ 2. She characterizes her job as similar to reconciling a bank statement against a checkbook ledger. *Id*. at ¶ 4.

Fernandez also points to other portions of her deposition testimony in support of her position. For example, Fernandez testified that the training she received for her Staff I (salaried) position was the same training as that she received for her intern (hourly non-exempt) position. Fernandez Depo. 245:8-14. In addition, she testified as to her limited involvement and lack of independence with respect to various projects on which she worked. *See, e.g., id*. at 66:1-10, 69:20-25, 86:6-20, 100:17-25.

Fernandez's declaration statements and deposition testimony are sufficient to create a triable issue of material fact as to the degree of independent judgment Fernandez exercised and the amount of supervision given her. A triable issue of material fact thus exists as to whether she came within the administrative exemption during her employment with E&Y.

B.   **Amount Of Time Fernandez Spent Performing Work That Meets The Test Of The Exemption**

Because triable issues of material fact exist as to the two elements of the administrative exemption discussed above, the Court need not reach the question of whether Fernandez was "primarily engaged in duties that meet the test of the exemption" while at E&Y. *See* 8 Cal. Code. Regs. 11040(1)(A)(2)(f). Nonetheless, the Court will address this element briefly. The "primarily engaged" element has been construed to require that the employee spend at least fifty percent of his or her time on work that meets the test of the exemption. *See Combs v. Skyriver Communications, Inc.*, 159 Cal. App. 4th 1242, 1267 (2008). In analyzing this element, the Court must consider both how the employee actually spends his or her time *and* whether the employee's conduct diverges from the employer's realistic expectations. *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 802 (1999) (discussing a different wage order containing a similar requirement that the employee spend more than fifty percent of his or her time on specified duties). An employee that "falls below the 50 percent mark due to his own substandard performance should not thereby be able to evade a valid exemption." *Id*.

E&Y argues that Fernandez spent at least fifty percent of her time on duties falling within the exemption, and that any failure to meet this element was due to Fernandez's own substandard performance. E&Y submits substantial evidence that Fernandez's performance in fact was substandard, including her own deposition testimony that she did just enough to get by, regularly was late, and on one occasion failed to report to work until nearly lunchtime because she had gone to Mexico for the weekend. Fernandez Depo. 219:8 - 221:23. It is apparent that Fernandez was a less than exemplary employee. However, it simply is not clear from this record whether her position, performed as legitimately expected by E&Y, met the elements of the administrative exemption.

## IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that:

(1) E&Y's motion for summary judgment as to the claims of Sarah Fernandez is DENIED;

(2) A case management conference is set for March 6, 2009 at 10:30 a.m.

DATED: January 15, 2009

_____
JEREMY FOGEL
United States District Judge

1

2  Copies of Order served on:

3

4  Anastasia Melinda Boles aboles@akingump.com, westdocketing@akingump.com

5  Arthur William Lazear awl@hoffmanandlazear.com

6  Catherine A. Conway cconway@akingump.com, thowe@akingump.com,
7  westdocketing@akingump.com

8  Christopher Blanchard cblanchard@akingump.com

9  Gregory William Knopp gknopp@akingump.com, dkucko@akingump.com,
   westdocketing@akingump.com

10  H. Tim Hoffman hth@hoffmanandlazear.com

11  Leon Greenberg wagelaw@aol.com, leongreenberg@overtimelaw.com, wagelaw@hotmail.com

12  Mark R. Thierman laborlawyer@pacbell.net, kellyann@callatg.com, thier3@callatg.com,
13  thier4@callatg.com, thier6@callatg.com

14  Max Folkenflik max@fmlaw.net

15  Morgan Matthew Mack mmm@hoffmanandlazear.com

16  Ross L. Libenson , Esq rll@hoffmanandlazear.com, ross@libensonlaw.com,
    ross.libenson@gmail.com

17  Stephanie S Der sder@akingump.com, thowe@akingump.com, westdocketing@akingump.com

18

19  Joel M. Cohn
    Akin Gump Strauss Hauer & Feld LLP
20  1333 New Hampshire Ave NW, Ste 400
    Washington, DC 20036
21

22

23

24

25

26

27

28

Case No. C 05-4867 JF (HRL)
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC2)