**E-Filed 9/20/2011**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID HO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ERNST & YOUNG, LLP,<br><br>　　　　　Defendant. | Case Number 5:05-cv-04867-JF<br><br>(consolidated for class certification purposes with case nos. 5:08-cv-04988-JF and 5:08-cv-02853-JF)<br><br>ORDER[1] GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION; AND DENYING MOTION TO DISMISS OR STAY |

　　　　Plaintiffs move for class certification pursuant to Fed. R. Civ. P. 23. Defendant Ernst & Young, LLP ("E&Y") moves to dismiss the action or alternatively to stay it pending arbitration. The Court has considered the moving and responding papers as well as the oral arguments presented at the hearings on March 25, 2011, and August 19, 2011. For the reasons discussed below, the motion for class certification will be granted in part and denied in part, and the motion to dismiss or to stay will be denied.

---

[1] This disposition is not designated for publication in the official reports.

# I. BACKGROUND

In California, the operations of E&Y are organized into three practice groups: Tax, Assurance and Advisory Business Services ("AABS" or "Audit"), and Transaction Advisory Services ("TAS"). Within each practice group, employees are organized in ascending order as follows: Staff 1, Staff 2, Senior 1, Senior 2, Senior Manager, and Partner.

Plaintiffs Sarah Fernandez and Michelle Richards seek certification of – and seek to represent – a class consisting of:

All persons employed by E&Y from September 15, 2001 until class notice is given ("class period") who:

(1) assisted certified public accountants in the practice of accountancy, as provided for in California Business & Professions Code §§ 5051 and 5053, AND
(2) were not licensed by the State of California as certified public accountants or attorneys and were classified as exempt from California labor laws, AND who
(3) were employed at any time during the class period in one or more of the following capacities:
   (A) Staff I and II in the Assurance group
   (B) Senior I and II in the Assurance group
   (C) Staff I and II in the Tax group
   (D) Senior I and II in the Tax group
   (E) all persons employed during the period June 19, 2004 until the time class notice is given who worked as Finance Management Associates ("FMAs").

## II. MOTION FOR CLASS CERTIFICATION

**A. Rule 23 Standards**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011) (internal quotation marks and citation omitted). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. (internal quotation marks and citation omitted).

Rule 23(a) provides four prerequisites that must be satisfied for class certification:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A plaintiff also must establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including that: (1) there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S.Ct. at 2551. Analysis of these factors "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id*. at 2552 (internal quotation marks and citation omitted). "Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, e.g., jurisdiction and venue, is a familiar feature of litigation." *Id*.

**B.  Numerosity**

Plaintiffs claim that there are more than 4,000 potential class members. E&Y does not argue that Plaintiffs have failed to satisfy the numerosity requirement.

**C.  Commonality**

Class members' claims must depend upon a common contention that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551. "What matters to class certification . . . is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. (internal quotation marks and citation omitted).

The present action raises several questions of fact or law that are common to the proposed class, including whether the professional exemption under California law requires a license for

accountants, whether accounting is a "learned profession" under California Wage Order 4-2001, and whether E&Y's standardized policies prevented class members from customarily and regularly exercising discretion and independent judgment with respect to matters of significance. However, as noted above, the putative class members worked in nine different positions[2] within E&Y's hierarchy, over a ten-year span. "Some thrived while others did poorly." *See Dukes*, 131 S.Ct. at 2557. Accordingly, the Court harbors some reservations with respect to the commonality requirement.

**D.     Typicality**

The Court must determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

"[T]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 131 S.Ct. at 2551 n.5.

Fernandez worked in the Assurance group; she worked only as staff – she never held a senior position. Richards worked in the Tax group as a staff and a senior. E&Y argues persuasively that Fernandez and Richards are not typical of persons who worked in entirely different positions. Several district courts addressing wage and hour class claims in the context of large accounting firms have held that named plaintiffs cannot represent employees who worked in different lines and different positions. *See, e.g., Campbell v.*

---

[2] Staff I and II in the Assurance group, Senior I and II in the Assurance group, Staff I and II in the Tax group, Senior I and II in the Tax group, and all persons employed during the period June 19, 2004 until the time class notice is given who worked as Finance Management Associates ("FMAs").

4

*PriceWaterhouseCoopers, LLP*, 253 F.R.D. 586, 596 (E.D. Cal. 2008) (holding that typicality requirement was met, but only as to positions plaintiffs actually held in one division of assurance line of service).

With respect to Fernandez, there is the additional problem that there is significant evidence that Fernandez spent the bulk of her time engaged in non-exempt work because she failed to meet E&Y's performance expectations. This is a defense particular to her.

### E.   Adequacy

Plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). When considering the adequacy of a class representative, courts generally consider only two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). There is no evidence of any conflict of interest, and Plaintiffs certainly have been vigorous in prosecuting the action.

### F.   Predominance Of Common Questions

Under the Rule 23(b)(3) predominance requirement, the Court must go beyond asking whether any common questions exist and ask whether these common questions "predominate over any questions affecting only individual members" of the putative class. Fed. R. Civ. P. 23(b)(3). This analysis focuses on "the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks and citation omitted). The Rule 23(b)(3) inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* (citation omitted).

The parties devote much of their briefing to the predominance requirement. District court decisions addressing classes similar to the one proposed here have come out differently. In *Brady v. Deloitte & Touche, LLP*, 2010 WL 1200045 (N.D. Cal. Mar. 23, 2010), Judge Illston

5

granted class certification with respect to a class of "all salaried California employees of defendant's 'Audit line of service' who were not licensed accountants and were not paid overtime for working more than eight hours in a day or forty hours in a week." *Id*. at *1. The plaintiffs were not trying to represent employees who worked in different positions. In *Campbell*, a judge in the Eastern District of California certified a similar class, although he limited the class to those positions that the named plaintiffs actually held. *Campbell*, 253 F.R.D. at 596. In *Mekhitarian v. Deloitte & Touche*, 2009 WL 6057248 (C.D. Cal. Nov. 3, 2009), the court denied certification of a class similar to the one at issue here, holding that the potential class members "engaged in a wide variety of tasks of varying complexity," and thus that individual issues predominated.

**G.    Conclusion**

This motion has been ably briefed, and both positions are supported by significant evidence. After considering the record, and the authorities discussed above, the Court concludes that Plaintiffs have failed to make the requisite showing with respect to the proposed class. Richards and Fernandez fail to meet the typicality requirement because they worked in different lines and different positions than many of the putative class members. Moreover, as noted above, Defendants have asserted a robust defense that is particular to Fernandez, and which will require resolution of factual issues unrelated to the claims of other putative class members. Common questions clearly do not predominate with respect to her.

At the same time, the Court concludes that Richards would be an appropriate class representative of a more narrowly defined class of persons who held staff or senior positions in the Tax group. The Court is satisfied that if the proposed class were narrowed in this manner, all of the Rule 23 requirements, including commonality and typicality, would be met.[3]

---

[3] E&Y asserts that although Richards was given the title of senior, she actually never functioned as a senior. E&Y seems to imply that Richards' title of senior does not "count" for purposes of analyzing whether she should be permitted to act as a class representative. The Court concludes that although her duties may have varied from those of other seniors in the Tax group, Richards in fact held a senior position and may represent others who held that position.

6
Case No. 5:05-cv-04867-JF
ORDER GRANTING IN PART AND DENYING IN PART  MOTION FOR CLASS CERTIFICATION ETC.
(JFLC2)

### III. MOTION TO DISMISS OR TO STAY

E&Y moves separately to dismiss the action on the ground that Plaintiffs' wage and hour claims are subject to binding arbitration under their employment agreements. Alternatively, E&Y moves to stay the litigation and to compel arbitration of Plaintiffs' claims. Plaintiffs contend that E&Y has waived any right to compel arbitration.

"A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). However, waiver of the right to arbitration is disfavored because it is a contractual right, and thus "any party arguing waiver of arbitration bears a heavy burden of proof." *Id.* (internal quotation marks and citation omitted). This test applies to both express and implied waiver. *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 758 (9th Cir. 1988).

Plaintiffs assert that E&Y had knowledge of its contractual right to compel arbitration; that E&Y acted in a manner inconsistent with this right by litigating this action for six years without once raising the binding arbitration clause; and that they would be prejudiced if they were required to abandon this lawsuit and pursue their claims in an arbitration. E&Y claims that it did not seek to compel arbitration earlier in the proceedings because any such motion would have been futile in light of California's hostility toward agreements that preclude class arbitration. According to E&Y, enforcement of the arbitration provision became possible only after the April 2011 decision *AT&T Mobility v. Concepcion*, 131 S.Ct. 1740 (2011), and under these circumstances it cannot be deemed to have waived its arbitration defense.

In *Fisher*, the defendant, like E&Y here, did not move to compel arbitration at the outset of the suit and did not raise arbitration as an affirmative defense. The parties litigated the case for more than three years, during which time they engaged in significant discovery and motion practice. At that point, the United States Supreme Court issued a decision that impacted the defendant's right to enforce the arbitration agreement. When the defendant finally asserted the arbitration agreement, the plaintiffs argued waiver. The Ninth Circuit concluded that because the

defendant "properly perceived that it was futile to file a motion to compel arbitration until Byrd[4] was decided," the defendant's failure to assert arbitration at the outset of the litigation was not inconsistent with an existing right. *Fisher*, 791 F.2d at 695-97. The court also concluded that the plaintiffs were not prejudiced by the defendant's delay in asserting the arbitration clause, discounting the plaintiffs' litigation costs as "self-inflicted" because the plaintiffs knowingly asserted arbitrable claims in a legal action. *Id*. at 698.

The present case is distinguishable. In *Fisher*, the Ninth Circuit determined as a matter of law that it would have been futile for the defendant to seek to compel arbitration at the inception of the litigation or for more than three years thereafter. Thus the defendant's conduct could not be construed as inconsistent with an existing right. Here, however, it is far from clear that a motion to compel arbitration at the outset of the litigation would have been futile. E&Y cites *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007), in support of its futility argument. However, *Gentry* was decided two years after *Ho*, the lead case in this action, was filed. E&Y points out that Fernandez was not added as a named plaintiff in *Ho* until just before *Gentry* was decided, and that Richards did not file her action until after *Gentry* issued. However, the fact that E&Y elected not to enforce the arbitration provision against Ho long before *Gentry* was decided renders its assertion that it refrained from raising an arbitration defense solely because California law would have rendered such a defense futile less credible. *Gentry* still had not been decided when E&Y filed its answer to the amended complaint adding Fernandez, yet E&Y did not raise the arbitration provision as a defense at that time either.[5]

Importantly, the employment agreements in question contain a choice-of-law provision specifying that disputes are to be governed by the Federal Arbitration Act or by New York law, neither of which would have precluded arbitration of the present claims. E&Y argues that a district court sitting in California and applying California's choice of law rules would have

---

[4] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).

[5] E&Y filed its answer to the amended complaint on July 31, 2007. *Gentry* issued on August 30, 2007.

8

1  refused to enforce this choice-of-law provision and instead would have applied California law.
2  While that certainly *might* have been the result, this Court cannot conclude as a matter of law that
3  it *would* have been the result. E&Y had at least a colorable argument that the parties' choice of
4  law ought to be honored, particularly before *Gentry* was decided. Accordingly, the Court cannot
5  conclude that it would have been futile for E&Y to assert the arbitration provision as a defense in
6  the present action.
7        Relying upon *Fisher*, E&Y asserts that even if its conduct was inconsistent with its right
8  to arbitrate, Plaintiffs have not suffered any prejudice. However, the prejudice to Plaintiffs in
9  this case goes well beyond the expenditure and duplication of effort claimed by the plaintiffs in
10 *Fisher*. The parties' substantive rights have been affected – E&Y obtained summary judgment
11 against Ho, and it was able to flesh out its "poor employee" defense against Fernandez in the
12 summary judgment motion it brought against her. The Court has relied upon the "poor
13 employee" defense in concluding that Fernandez is not an appropriate class representative.
14 Accordingly, the Court concludes that E&Y has waived its contractual right to compel
15 arbitration.
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

# IV. ORDER

(1) The motion for class certification is GRANTED IN PART AND DENIED IN PART as set forth herein. The Court hereby CERTIFIES the following class:

All California[6] employees of E&Y who were employed during the period September 15, 2001 until the time when class notice is given ("class period") who:

    (1) assisted certified public accountants in the practice of accountancy, as provided for in California Business & Professions Code §§ 5051 and 5053, AND

    (2) were not licensed by the State of California as certified public accountants or attorneys and were classified as exempt from California labor laws, AND who

    (3) were employed at any time during the class period in one or more of the following capacities:
        (A) Staff I and II in the Tax group
        (B) Senior I and II in the Tax group;

(2) The motion to dismiss or stay proceedings is DENIED.

DATED: September 20, 2011

_____
JEREMY FOGEL
United States District Judge

---

[6] Plaintiffs' proposed class definition omits the word "California." The Court understands Plaintiffs to be requesting certification with respect to a class of California employees only.